# KING *v.* HARRINGTON.

EQUITY; DECREES; REFERENCES; APPEAL AND ERROR.

1. A decree may be final in the sense that it may be appealed from, although not final in the strict technical sense of the term. If it dispose of all questions within the pleadings, and nothing remains but to adjust an account between the parties in the execution of the decree, it is final; but if a reference is made for a judicial purpose, as to state an account between the parties, upon which a further decree is to be entered, the decree is not final.

2. A decree is interlocutory, and therefore not appealable, which adjudges that a partnership between the complainant and the defendant, the existence of which is denied by the complainant, does exist, refers the cause to the auditor to hear and take evidence and to state an account between the partners as to the affairs of the partnership, and to report the same and the evidence so taken to the court, and continues the cause, to await the report and further order of the court. (Citing *Gilbert* v. *Washington Beneficial Endowment Asso.* 10 App. D. C.

316, s. c. 173 U. S. 701, 43 L. ed. 1185, 19 Sup. Ct. Rep. 877, and
Following *Metzger* v. *Kelly*, 34 App. D. C. 548.)

No. 2061.  Submitted March 10, 1910.  Decided April 5, 1910.

HEARING on an appeal by the complainant from a decree of
the Supreme Court of the District of Columbia establishing
a partnership and referring the cause to the Auditor to state
an account between the parties, and continuing the cause to
await such report.                              *Appeal dismissed.*

The COURT in the opinion stated the facts as follows:

This suit was begun by a bill filed by Abe King on March
24th, 1909, against Michael Harrington and Lorenzo A. Bailey,
—the latter being sued formally as trustee.   The bill alleged
that Harrington, being indebted to King in the sum of
$3814.98, for which he had executed a note, conveyed to Bailey
certain stock, fixtures, leasehold, and license contained in, and
appurtenant to, a barroom occupied by Harrington.   The trust
contained the usual provision for taking possession and sale by
the trustee in default of payment.   It was, by collateral agree-
ment, provided that Harrington should make daily deposit of
receipts in the name of Harrington & Company, which was to
be drawn upon exclusively by King to pay current expenses.
Default having been made in the payment of the note and in
the performance of the collateral agreement, demand was made
of the trustee to take possession and execute the trust.   The
trustee declined to execute, because he could not obtain posses-
sion of the goods, etc.   The insolvency of Harrington is al-
leged, his failure to pay his lease, etc., wherefore he is in danger
of being evicted and having the business closed.   The bill
prayed for the appointment of a receiver to take possession of
the property and premises and preserve the same; for an ac-
counting of receipts, and for a foreclosure of the trust deed.
Bailey admitted the allegations of the bill.   In answer to the
rule to show cause, Harrington filed a lengthy answer.   He
alleged that King was a partner in the business, but desired

to keep the fact a secret because he was an officer of a brewing company in the city of Washington. He denied indebtedness to King, and alleged that the note was given at King's request to enable him to borrow money to pay certain partnership liabilities, and for that purpose only. He alleged also that King had obtained all of the receipts of the business, and asked that he be required to produce all vouchers for expenditures thereof. He further alleged that King is engaged in a scheme to deprive defendant of his interest, and to defraud partnership creditors. This answer was filed April 2, 1909. On April 15th, Bailey, who filed the bill as solicitor for King, withdrew from the case, and Crandall Mackey was substituted for him. Issue was joined by him on the foregoing answer. April 16th, 1909, Harrington filed an unimportant amendment, and on the same day a cross bill. This contained allegations similar to those in the answer to the rule to show cause, and prayed for a dissolution of the partnership, for a sale of the partnership assets, a statement of the accounts, and division of the proceeds of sale. No answer was filed to the cross bill. April 19th, 1909, an order was entered by the justice presiding in the equity court, declaring upon "the testimony of the witnesses produced in open court by request of counsel for both parties, that King and Harrington are, and have been, since March 5th, 1907, partners in said business." Receivers were thereupon appointed, and the order concluded as follows:

"The court further finds that the defendant is entitled to an accounting against the plaintiff, and that the plaintiff is likewise entitled to an accounting against the defendant, respecting the affairs of the said partnership; and the cause is referred to the auditor, with directions to hear and take evidence, and to state an account between the said partners as to the affairs of said partnership, and to report same and the evidence so taken to the court. And the cause is continued to await the same, and the further order of the court thereupon."

A motion was made on behalf of King to vacate this order, on several grounds. Among these it was urged that the hearing was on the rule to show cause, and the court had no jurisdic-

tion then to entertain the cross bill, and enter a final decree determining the matters alleged in the cross bill. It was also alleged that the only request for hearing was on the rule to show cause as to the appointment of a receiver, and that counsel did not request a hearing of testimony on the merits. Affidavits were filed tending to show that the understanding of King's solicitor was that the hearing was only on the rule to show cause, and that he did not submit the cause upon its merits, etc. Counter affidavits were filed as to a different state of facts by the several solicitors for Harrington. April 30th, 1909, the court denied the contention of King's solicitor, and, reciting the facts as found, denied the motion to vacate the decree. King's solicitor gave notice of general appeal, and also of intention to apply to the court of appeals for a special appeal. The general appeal bond was given on May 20, and the transcript was lodged in this court September 14th, 1909. On November 14th an application was made to this court for the allowance of a special appeal. This application did not set out the decree sought to be appealed from, and left the matter in doubt whether a final decree had in fact been entered, from which an appeal would lie in regular course. For this reason in part, and for delay, and because the conditions, as alleged in the application, did not seem to warrant a special appeal, the application was denied.

The cause is now before us on the general appeal before mentioned. No appearance has been entered for the appellee.

*Mr. Crandall Mackey* for the appellant.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

At the threshold of the case lies the question whether the decree is a final one. A decree may be final in the sense that it may be appealed from, though not final in the strict technical sense of the term. If it dispose of all questions within the

pleadings, and nothing remains but to adjust an account between the parties in the execution of the decree, it is final. *Winthrop Iron Co.* v. *Meeker,* 109 U. S. 180–184, 27 L. ed. 898–900, 3 Sup. Ct. Rep. 111. But if the reference is for a judicial purpose, as to state an account between the parties, upon which a further decree is to be entered, it is not final. *McGourkey* v. *Toledo & O. C. R. Co.* 146 U. S. 536–545, 36 L. ed. 1079–1083, 13 Sup. Ct. Rep. 170; and cases cited. The present case seems to be of the latter character. It will be remembered that the order of reference directs the auditor to take evidence as to the affairs of the partnership (that had been found to exist), and to report the same to the court; the cause is continued for that purpose. The duties required of the auditor are judicial in their nature as well as ministerial. It may be that, after the taking of the testimony, the question of the partnership may be presented in a different light. If so, there will be nothing to prevent the remodeling of the decree on final entry. The decree differs in this respect from that in *Winthrop Iron Co.* v. *Meeker,* 109 U. S. 180, 27 L. ed. 898, 3 Sup. Ct. Rep. 111, on which appellant relies. The doctrine of the Supreme Court of the United States as regards the finality of decrees is rather more strict than formerly. See *McGourkey* v. *Toledo & O. C. R. Co.* 146 U. S. 536–543, 36 L. ed. 1079–1083, 13 Sup. Ct. Rep. 170, and cases reviewed therein. In *Gilbert* v. *Washington Beneficial Endowment Asso.* 10 App. D. C. 316–334, upon which appellant also relies, the decree vacated a conveyance under which Gilbert claimed, ordered the proceeds of the property in the hands of receivers, before appointed, to be held for the payment of certain certificate holders of the grantor in that conveyance, and referred the matter of ascertaining said claims and their respective priorities, to the auditor. The appellant was interested in maintaining the conveyance that had been vacated, having no interest whatever in the distribution of the proceeds of the property after it was taken from him. The court overruled a motion to dismiss, saying that, as far as the appellant was concerned, the decree was

as final as it could be. The appeal was nevertheless dismissed in the Supreme Court because the decree was not final. 173 U. S. 701, 43 L. ed. 1185, 19 Sup. Ct. Rep. 877. In obedience to that decision and others cited, we are constrained to hold that the decree is not final, and that this court had, therefore, no jurisdiction of the cause in its present stage. *Metzger* v. *Kelly* (present term) 34 App. D. C. 548. If there be merit in the case of appellant, he will have the benefit of the same on appeal from the decree when made final.

The appeal must be dismissed, with costs. It is so ordered.

*Dismissed.*